CLERK'S OFFICE U.S. DISTRICT COURT AT
ROANOKE, VA
FILED
1/2/2025
LAURA A. AUSTIN, CLERK
BY: s/C. Kemp
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| TRUSTEES OF THE LABORERS TRUST FUND, *et al.*, | ) ) ) |
| Plaintiffs, | ) Civil Action No. 7:23-cv-00821 |
| v. | ) ) **MEMORANDUM OPINION** |
| LCM CORPORATION and LAWRENCE C. MUSGROVE, III | ) ) ) By:   Hon. Thomas T. Cullen ) United States District Judge |
| Defendants. | ) |

Plaintiffs Trustees of the Laborers Trust Fund, Trustees of the Laborers Pension Fund, West Virginia Laborers Training Trust Fund, Southwest Virginia Contractors Association Industry Advancement Fund, Mid-Atlantic Regional Organizing Committee, Laborers-Employers Cooperation and Education Trust Fund, and Laborers' Local Union 980 (collectively "Plaintiffs") brought this action against LCM Corporation ("LCM") and Lawrence C. Musgrove, III ("Musgrove") (collectively "Defendants") for breach of a collective bargaining agreement, breach of a prior settlement agreement between the parties, and breach of fiduciary duty. Defendants failed to respond to Plaintiffs' claims. Accordingly, Plaintiffs moved for entry of default, which the clerk granted. (*See* ECF Nos. 6 & 7.) The matter is now before the court on Plaintiffs' motion for default judgment against Musgrove on Count III (breach of the Settlement Agreement) of the Complaint.[1] (Mot. Default J. [ECF

---

[1] On July 29, 2024, Plaintiffs filed a Suggestion of Bankruptcy as to LCM. Thereafter, in accordance with 11 U.S.C. § 362(a)(1), the court stayed the proceedings as to LCM. Consequently, Plaintiffs seek default judgment at this time only against Musgrove to whom the bankruptcy stay does not extend. *See Credit All. Corp. v. Williams*, 851 F.2d 119, 121 (4th Cir. 1988) ("Congress knew how to extend the automatic stay to non-bankrupt parties

No. 9]; Mem. Supp. of Mot. Default J. at 1–2 [ECF No. 10].) For the reasons discussed below the court will grant that motion.

## I. BACKGROUND

Defendant LCM and Plaintiff Laborers' Local Union 980 were parties to a collective bargaining agreement (the "CBA"). (Compl. ¶ 17 [ECF No. 1].) Under the CBA, LCM agreed to pay to Plaintiffs certain sums of money for each hour worked by those of LCM's employees covered by the CBA. (*Id.* ¶ 18.) But LCM failed to make the required payments for the work its employees performed between August 2013 and October 2021. (*Id.* ¶ 21.) To remedy the delinquency, the parties entered into a settlement agreement (the "Agreement") on January 13, 2022. (*Id.* ¶ 34.) Under the Agreement, LCM agreed to make 63 monthly payments of $10,000 each and a final payment of $8,124.30 to Plaintiffs. (*Id.*) In addition, the Agreement required LCM to timely make all future monthly contributions for its employees work for the duration of the Agreement. (*Id.* ¶ 35.)

In a promissory note accompanying the Agreement, Defendant Musgrove personally guaranteed LCM's obligations under the Agreement—both the payment of delinquent funds and the timely payment of future contributions—up to the amount of $589,145.51. (*Id.* ¶ 36.) Musgrove also guaranteed payment of any interest accrued on unpaid funds and attorneys' fees and costs incurred in enforcing the Agreement. (*Id.* ¶ 36, 42.) Payment of interest and attorneys' fees and costs was not subject to the $589,145.51 cap. (*Id.*)

---

when it intended to do so. . . . A reading of § 362 restricting a creditor's ability to proceed against its guarantor would eliminate the protection of assured creditors contemplated by the Bankruptcy Code."); *CresCom Bank v. Terry*, 499 B.R. 494, 496 (D.S.C. 2013) (noting that the "automatic stay provision [found at 11 U.S.C. 3162(a)] applies to judicial proceedings and enforcement of judgments against only the debtor, not third[-]party defendants or co-defendants").

LCM made the first eleven payments under the Agreement while staying current on accruing contributions. (*See id.* ¶ 37.) Between September 2022 and October 2023, LCM again failed to make the required payments for the work of its employees and ceased making the agreed-upon monthly payments under the Agreement. (*Id.* ¶ 21, 37.) On January 17, 2023, Plaintiffs sent LCM and Musgrove a letter, notifying them of the breach and demanding the breach be cured within 10 days. (*Id.* ¶ 38.) The letter declared that if Defendants failed to cure the breach within 10 days, Plaintiffs would exercise their right under the Agreement to accelerate payment such that the entire unpaid balance would be due at that time. (*Id.*) Despite the letter and additional efforts by Plaintiffs to obtain Defendants' compliance with the terms of the Agreement, Defendants failed to cure the breach and made no further payments. (*Id.* ¶ 39–40.)

Plaintiffs sued Defendants in this court on December 20, 2023. The Complaint asserts five claims against Defendants arising from their failure to make the required payments, including a claim against Musgrove for breach of the Agreement in Count III of the Complaint.[2] (*See generally id.* ¶¶ 20–48.) The Complaint requests $589,145.51 in damages from Musgrove, plus interest, attorneys' fees, and costs. (*Id.* ¶¶ B–E.) Defendants were served on December 27, 2023 (*see* ECF Nos. 4 & 5), and their responsive pleadings were due by January

---

[2] The court has jurisdiction over Count I of the complaint under 28 U.S.C. § 1331, because Count I arises under the Employee Retirement Income Security Act of 1974 ("ERISA"). Consequently, the court has jurisdiction over Count III under 28 U.S.C. § 1367 because Counts I and III are "so related . . . that they form part of the same case or controversy," 28 U.S.C. § 1367(a), namely LCM's nonpayment of certain funds to Plaintiffs. Though Count I is brought only against LCM, and this case is currently stayed against LCM on account of LCM's bankruptcy filing (*see* ECF No. 12), Count I remains a live and active claim in this case. The stay does not extinguish Count I or deprive the court of supplemental jurisdiction over claims related to it.

17, 2024, *see* Fed. R. Civ. P. 12(a)(1)(A)(i). Neither Defendant filed a responsive pleading by that date, and neither has responded to the Complaint in any manner since then.

On March 21, 2024, Plaintiffs moved for entry of default against both Defendants, which the clerk granted the next day. (ECF Nos. 6 & 7.) On August 16, 2024, Plaintiffs filed the instant motion for default judgment against Musgrove as to Count III of the Complaint. (Mot. Default J. at 1.) In that motion, Plaintiffs requested that the court award them damages in the amount of Musgrove's personal guarantee, plus interest, attorneys' fees, and costs. (*Id.*)

The default-judgment motion did not, however, provide the court with sufficient information and admissible evidence to substantiate independently the claimed damages, fees, and costs. Consequently, the court ordered Plaintiffs to submit supplemental evidence, consisting of authentic and otherwise admissible business records, that contained enough detail for the court to verify the appropriate judgment amount in this matter. (Order, Oct. 2, 2024 [ECF No. 13].)

Plaintiffs complied with the court's order and submitted a supplemental brief with supporting evidence on November 29, 2024. (*See generally* Suppl. Br. [ECF No. 15].) In that supplemental filing, Plaintiffs specified that they seek a total award of $605,130.98, consisting of (1) principal due under the Agreement, capped at Musgrove's personal guarantee of $589,145.51, (2) pre-judgment accrued interest on delinquent contributions after September 2022 in the amount of $9,692.97, and (3) attorneys' fees and court costs in the amount of $5,542.50. (*Id.* at 4–8.) Plaintiffs also seek post-judgment interest accruing until payment. (*Id.* at 4.)

## II.     STANDARD OF REVIEW

The Fourth Circuit has "repeatedly expressed a strong preference that . . . claims . . . be disposed of on their merits." *Colleton Preparatory Acad., Inc. v. Hoover Universal, Inc.*, 616 F.3d 413, 417 (4th Cir. 2010); *see also United States v. Moradi*, 673 F.2d 725, 727 (4th Cir. 1982) ("[T]he clear policy of the Rules is to encourage dispositions of claims on their merits . . . ."). But when a "properly served defendant . . . fails to plead or otherwise defend against the allegations in [a] complaint," the court is authorized to enter default judgment against that defendant under Federal Rule of Civil Procedure 55(b)(2). *Reynolds Innovations, Inc. v. E-CigaretteDirect, LLC*, 851 F. Supp. 2d 961, 962 (M.D.N.C. 2012). "To obtain a default judgment, a party must first seek an entry of default under Federal Rule of Civil Procedure 55(a)." *Hayhurst v. Liberty Int'l Underwriters*, No. 5:08cv107, 2009 U.S. Dist. LEXIS 5347, at *2 (N.D.W. Va. Jan. 29, 2009). After the clerk enters default, the court must determine if the complaint sets forth a legitimate cause of action, accepting the well-pleaded allegations of fact as true. *See Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001). Claims for damages, however, are not simply accepted as true. *See Lopez v. XTEL Constr. Grp., LLC*, No. Civ. PWG-08-1579, 2011 WL 6330053, at *4 (D. Md. Dec. 16, 2011). Instead, the plaintiff must establish its damages by way of an evidentiary hearing or submitting supporting evidence to the court. *Id.* (collecting cases). At bottom, the award of a default judgment is subject to the district court's discretion; it is not a matter of right. *See, e.g.*, *Leighton v. Homesite Ins. Co. of the Midwest*, 580 F. Supp. 3d 330, 332 (E.D. Va. 2022).

### III. ANALYSIS

**A. Liability**

Default judgment is appropriate on Plaintiffs' breach-of-contract claim. Before awarding default judgment, the court must ensure that Plaintiffs stated a claim for relief as to their breach-of-contract claim—accepting as true the well-pleaded factual allegations in the complaint—because the clerk's entry of default does not establish liability. *See Ryan*, 253 F.3d at 780; *see also* 10A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2688.1 (4th ed. 2023) ("Liability is not deemed established simply because of the default . . . .").

First, the court must determine what law applies to Plaintiffs' breach-of-contract claim. Because this is a diversity action, the court applies the choice-of-law rules of the state in which it sits—Virginia. *See Hitachi Credit Am. Corp. v. Signet Bank*, 166 F.3d 614, 623–24 (4th Cir. 1999) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496–97 (1941)). For a breach of contract, absent unusual circumstances, Virginia law gives effect to the choice-of-law clause in the relevant contract. *Id.* at 624. The Agreement unambiguously states that it "shall be governed by the laws of the Commonwealth of Virginia . . . ." (Suppl. Br., Ex. 1, Ex. B (hereinafter "Agreement") ¶ 17 [ECF No. 15-1].) Therefore, Virginia law applies.

Under Virginia law, "[t]he elements of a breach of contract action are (1) a legally enforceable obligation of a defendant to a plaintiff; (2) the defendant's violation or breach of that obligation; and (3) injury or damage to the plaintiff caused by the breach of obligation." *Daily v. White*, 520 F. Supp. 3d 835, 841–42 (W.D. Va. 2021) (quoting *Sunrise Continuing Care, LLC v. Wright*, 671 S.E.2d 132, 135 (Va. 2009)). All three elements are satisfied in this case.

First, the Agreement is a legally enforceable obligation for Musgrove to guarantee LCM's payment if LCM becomes delinquent on its obligation to pay. (Compl. ¶¶ 34–36; Agreement ¶¶ 3, 6.) Second, Musgrove breached his obligation by failing to ensure that LCM continued to make its monthly payments and, when LCM did not make timely payments, by failing to make those payments himself up to the amount of his personal guarantee. (Compl. ¶¶ 37–40.) Finally, Plaintiffs suffered an injury from that breach because they did not receive the money to which they were legally entitled. (*Id.* ¶ 40.) Accordingly, the Complaint states a claim for breach of contract against Musgrove.

Though there is a strong preference that claims be resolved on the merits, courts can enter default judgment when a defendant fails to plead or otherwise defend an action. *See Moradi*, 673 F.2d at 727. The requirements for a default judgment are satisfied in this case because Musgrove was properly served but has not appeared or otherwise defended against this lawsuit, the clerk entered default, and the Complaint states a claim for relief. *See Ryan*, 253 F.3d at 780. Therefore, the court will grant Plaintiffs' motion for default judgment.

### B. Damages

Next, the court must determine the damages that Plaintiffs are entitled to recover. *See Lopez*, 2011 WL 6330053, at *4. "A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c). In their Complaint, Plaintiffs request, as relevant here, (1) "damages for breach of the Settlement Agreement up to Mr. Musgrove's Personal Guarantee of $589,145.51," (2) interest on unpaid contributions, (3) "reasonable attorneys' fees and costs incurred in bringing and prosecuting the instant

lawsuit against LCM Corporation and Mr. Musgrove," and (4) post-judgment interest.[3] (Compl. ¶¶ B–F; Suppl. Br. at 4.)

### i. Missed Payments Under the Settlement Agreement

First, Plaintiffs request $589,145.51 to recoup payments that LCM failed to make under the Agreement. This consists of both payments detailed in the Agreement's payment schedule and contributions that should have been paid during the pendency of the Agreement. Under the Agreement, Musgrove's personal guarantee of payment of those funds is subject to a $589,145.51 cap (Agreement ¶ 8), but Plaintiffs must still show that LCM owed at least $589,145.51 under the Agreement at the time of breach. *See Oppenheimer v. Griffin*, No. 1:18-cv-00272, 2019 WL 7373784, at *5 (W.D.N.C. Dec. 31, 2019) (explaining that a party seeking a default judgment must "provide the court with sufficient information to ascertain monetary damages with reasonable certainty" (quoting *Int'l Painters & Allied Trads Indus. Pension Fund v. Dettrey's Allstate Painting, LLC*, 763 F. Supp. 2d 32, 36 (D.D.C. 2011)).

At the time that the Agreement was executed, LCM owed a principal sum of $589,145.51 under the Agreement. (Agreement ¶ 2.) Under the Agreement's terms, that sum would be paid off through 63 monthly payments of $10,000 each and a final payment of $8,124.30. (*Id.* ¶ 3.) That payment schedule accounted for satisfaction of the principal debt and 3 percent interest. (*Id.*).

Plaintiffs provided a detailed payment history and a sworn affidavit by an officer of the third-party administrator that administered the benefit plans into which LCM's delinquent

---

[3] Although post-judgment interest was not specifically requested in the Complaint, as discussed *infra* § III.B.iv, its inclusion as an element of damages is mandatory under federal law. *See Quesinberry v. Life Ins. Co. of N. Am.*, 987 F.2d 1017, 1031 (4th Cir. 1993) (en banc) (citing 28 U.S.C. § 1961).

contributions should have been paid. That evidence shows that LCM made eleven payments under the Agreement before again becoming delinquent. (*See* Supp. Decl. of Michael Shockley ¶ 5 & Ex. C at 1–9, 14, 17, Nov. 27, 2024 [ECF No. 15-1].) When the last payment was made, a balance of $494,165.69 remained. (Agreement Ex. A.) Plaintiffs also submitted evidence showing that at the time of breach, LCM owed $247,138.54 in contributions that should have been paid during the pendency of the Agreement. (Shockley Decl. ¶¶ 6–9; & Ex. E at 5.) Therefore, Plaintiffs have submitted sufficient evidence to show that at the time of breach Defendants owed $741,304.23. Accordingly, the court will award Plaintiffs damages for payments that should have been made under the Agreement up to Musgrove's personal liability cap of $589,145.51.

### ii. Accrued Interest

Next, Plaintiffs request interest on unpaid contributions that accrued during the pendency of the Agreement. Plaintiffs calculate that interest at a rate of 3.5 percent per annum, but they provide no authority for that interest rate. (Suppl. Br. at 6.) Neither Plaintiffs' original motion, nor their supplemental brief, nor the accompanying declaration provide any explanation to justify a 3.5 percent interest rate. Instead, the plain terms of the Agreement provide for payment of interest at a rate of 3 percent. (*See* Agreement ¶ 3.) Accordingly, the court will award Plaintiffs interest on unpaid contributions through the date of judgment at a rate of 3 percent.

### iii. Attorneys' Fees and Costs

Third, Plaintiffs request attorneys' fees of $4,792.50 and costs of $750.00, for a total of $5,542.50 in attorneys' fees and costs. The Agreement is unambiguous that Musgrove is

responsible for attorneys' fees and costs if Plaintiffs have to sue to enforce the agreement. (Agreement ¶ 7); *see also* Fed. R. Civ. P. 54(d)(1) ("Unless a federal statute, these rules, or a court order provides otherwise, costs . . . should be allowed to the prevailing party."). And, under the terms of the Agreement, attorneys' fees and costs are not subject to the $589,145.51 cap on Musgrove's personal guarantee. (Agreement ¶ 9.) Plaintiffs' counsel filed an affidavit with the court detailing the work that he and another attorney at his firm performed and the costs for filing the lawsuit and serving Defendants. (Decl. of Jacob B. Szewczyk ¶ 9, Nov. 29, 2024 [ECF No. 15-2].) That affidavit and the accompanying evidence sufficiently support the claimed costs of $750.00 and counsel's representation that he and his law partner performed 17.75 hours of work on this case at $270/hour. (*Id.* ¶¶ 9, 12.)

In his affidavit, counsel also represents that the claimed hourly fee is at or below the usual and customary fee charged for this type of work. (*Id.* ¶ 12.) Based on its experience, the court agrees that $270 per hour is a reasonable rate in this geographic area. *See Robinson v. Equifax Info. Servs., LLC*, 560 F.3d 235, 244 (4th Cir. 2009) (explaining that the reasonableness of hourly rates must be determined relative to "the prevailing market rate of attorneys' fees in the relevant community where the district court sits"). Accordingly, the court will award Plaintiffs attorneys' fees and costs in the amount of $5,542.50.

### iv. Post-Judgment Interest

Finally, Plaintiffs must receive post-judgment interest. "[F]ederal law mandates the awarding of post-judgment interest." *Quesinberry*, 987 F.2d at 1031 (citing 28 U.S.C. § 1961); *see also Contitech USA, Inc. v. McLaughlin Freight Servs., Inc.*, No. 23-1379, 2024 WL 273899, at *4 (8th Cir. Jan. 25, 2024) (stating that post-judgment interest is mandatory even when it is not

requested). In a diversity action, the post-judgment interest rate is set by federal law. *See Vandevender v. Blue Ridge of Raleigh, LLC*, 756 F. App'x 230, 233 (4th Cir. 2018). Accordingly, Plaintiffs are entitled to post-judgment interest as calculated under 28 U.S.C. § 1961. *See, e.g., ExxonMobil Oil Corp. v. Black Stone Petroleum Inc.*, 221 F. Supp. 3d 755, 769 (E.D. Va. 2016).

## IV. CONCLUSION

For these reasons, Plaintiffs' motion for default judgment will be granted. Plaintiffs are entitled to damages in the amount of $594,688.01—consisting of $589,145.51 of payments that should have been made under the Agreement and $5,542.50 in attorneys' fees and costs—plus interest on unpaid contributions from the date on which the contributions were due through the date of judgment at a rate of 3 percent, plus post-judgment interest as calculated under 28 U.S.C. § 1961 from the date of judgment until the judgment is satisfied.

The clerk is directed to forward a copy of this Memorandum Opinion and the accompanying Order to all counsel of record.

**ENTERED** this 2nd day of January, 2025.

> */s/ Thomas T. Cullen*
> HON. THOMAS T. CULLEN
> UNITED STATES DISTRICT JUDGE